# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **KEITH J. ANTHONY, JR., #R61036,** ) | |
| ) | |
| **Plaintiff,** ) | |
| vs. ) | Case No. 20-620-RJD |
| ) | |
| **KYLE A. EDWARDS,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

**DALY, Magistrate Judge:**

Plaintiff Keith J. Anthony is incarcerated at Menard Correctional Center ("Menard") in the Illinois Department of Corrections ("IDOC"). On June 26, 2020, the Court severed the claims in this civil rights action, brought under 42 U.S.C. § 1983, from Plaintiff's original case, *Anthony v. Baldwin, et al.*, Case No. 20-cv-51-MAB. (Doc. 1, pp. 5-6).

This case includes two claims against Kyle A. Edwards; for clarity, the Court will retain the numbers assigned to these counts in the original screening order in No. 20-51-MAB:

> Count 8: First Amendment claim of retaliation against Kyle Edwards for writing Plaintiff a false disciplinary ticket in retaliation for Plaintiff filing a PREA (Prison Rape Elimination Act) complaint against him.
>
> Count 9: Fourteenth Amendment due process claim against Kyle Edwards for issuing Plaintiff a false disciplinary ticket resulting in a disciplinary hearing and the imposition of sanctions.

These claims are now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A,[1] which requires the Court to screen prisoner Complaints to filter out

---

[1] The Court has jurisdiction to screen the Complaint in light of Plaintiff's consent to the full jurisdiction of a magistrate judge and the Illinois Department of Corrections' limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding between the Illinois Department of Corrections and this Court.

nonmeritorious claims. 28 U.S.C. § 1915A(a). Any portion of a Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

Any claim other than those in Counts 8 and 9 (and the counts enumerated in the original case) that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.[2]

### The Complaint

Plaintiff makes the following allegations in his Complaint relevant to the claims herein: On November 13, 2018, while housed in general population, Plaintiff notified Correctional Officer Edwards and the gallery officer on duty that his legal correspondence box had a small crack and requested a new one. However, Edwards refused to replace the damaged box. (Doc. 2, pp. 12-13).[3]

On November 26, 2018, Edwards conducted a shakedown of Plaintiff's cell, confiscated his legal correspondence box, and issued Plaintiff a disciplinary ticket for dangerous contraband and damage or misuse of property. (Doc. 2, pp. 12-13, 19-22). Plaintiff had previously filed a PREA complaint against Edwards for making a verbal sexual advance. He asserts that Edwards denied the replacement box, shook down his cell, and issued the disciplinary report in retaliation for Plaintiff's complaint against him.

On December 4, 2018, Plaintiff was moved to segregation. When the Adjustment Committee heard the disciplinary ticket, they refused to allow Plaintiff to call his former cellmate (who had witnessed Plaintiff requesting a replacement property box from Edwards) as a witness

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").
[3] In the Complaint, Plaintiff labels the claims herein as "Claim #5" and "Claim #6." (Doc. 2, pp. 12-14).

2

at the hearing. (Doc. 2, p. 13). Plaintiff was found guilty and was punished with 120 days in segregation, loss of commissary and demotion in grade, and was charged for the damaged property box. (Doc. 2, p. 15).

Plaintiff was double-celled in Menard's North 2 Segregation Unit from December 4, 2018, to February 18, 2019, in a cell that was "not A.C.A. approved to house two inmates." (Doc. 2, pp. 14, 23-24). As a result of this excessive overcrowding, he suffered elevation of his already serious health issues, anxiety, paranoia, and emotional distress. (Doc. 2, pp. 14-15). When he wrote grievances regarding the conditions, Plaintiff was further harassed and written disciplinary tickets.

Plaintiff seeks expungement of the disciplinary report and damages. (Doc. 2, p. 16).

## Discussion

### Count 8

"An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). Filing a complaint for a prison official's violation of the Prison Rape Elimination Act, as Plaintiff did against Edwards, is activity protected under the First Amendment. *See Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009). Plaintiff's allegations that Edwards retaliated against him for that complaint by refusing to replace his legal correspondence box, then shaking down his cell and subjecting him to discipline for possessing the damaged box, are sufficient for him to proceed on his First Amendment retaliation claim against Edwards.

### Count 9

In order to state a claim for a procedural due process violation, Plaintiff must show that he was deprived of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). Notably, even a false disciplinary

report does not state a Fourteenth Amendment claim when the accused inmate is given a subsequent hearing on those charges in which the inmate is afforded the procedural protections outlined in *Wolff v. McDonnell*, 418 U.S. 539 (1974). *See Hanrahan v. Lane*, 747 F.2d 1137, 1140-41 (7th Cir. 1984).

Plaintiff alleges that the Adjustment Committee refused his request to call an inmate witness, which may have run afoul of the procedural protections set forth in *Wolff*. *Wolff* states that an inmate has the right to call witnesses to defend against a disciplinary charge – with the caveat that a witness request may be refused if it would jeopardize institutional safety or correctional goals. The record now before the Court does not reveal whether the hearing officer had a legitimate reason to refuse Plaintiff's witness request. However, even if that procedural safeguard was violated, Plaintiff still cannot demonstrate a due process violation unless the conditions of his disciplinary segregation imposed an "atypical and significant hardship" on him when compared to the conditions he would have faced in nondisciplinary segregation. *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997).

In order to assess whether a plaintiff was subjected to atypical and significant hardships, courts consider both the duration of the punitive segregation term, and the conditions of that confinement. *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009). For relatively short periods of disciplinary segregation, inquiry into specific conditions of confinement is unnecessary, and the claim is subject to dismissal. Only if the disciplinary segregation period was sufficiently long *and* if the conditions of confinement were unusually harsh, may an inmate maintain a civil rights claim for deprivation of a liberty interest without due process.

In Plaintiff's case, he states that he was punished with 120 days in segregation. (Doc. 2, p. 15). However, he claims that he was confined in harsh conditions (with another prisoner in a cell

designed for one person) for only 77 of those days (Dec. 4, 2018 – Feb. 19, 2019).  (Doc. 2, pp. 13-14).  Seventy-seven days is not long enough to trigger due process concerns.  *See Obriecht v. Raemisch*, 565 F. App'x 535, 539-40 (7th Cir. 2014) (ruling that 78 days in "deplorable conditions," including having to sleep on a mattress placed directly on a wet floor, did not implicate a liberty interest, but that plaintiff might have challenged the conditions of confinement while in segregation) (citing *Marion*, 559 F.3d at 697-98)); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (70 days in segregation, "a relatively short period when one considers his 12 year prison sentence," was not long enough to amount to a protected liberty interest).  This comparison is relevant in Plaintiff's case, where the 77 days in question is "relatively short" in the context of his aggregate sentence that exceeds 60 years.[4]  As with the cases cited above, the short duration of Plaintiff's disciplinary segregation time in the cramped cell forecloses any due process liberty interest regardless of the conditions.  *See Marion*, 559 F.3d at 698.

Further, there is no protected liberty interest in access to commissary or in an inmate's "grade" classification.  *See Thomas*, 130 F.3d at 762 n.8 (collecting cases); *Woody v. Zatecky*, 594 F. App'x 311, 312 (7th Cir. 2015).  As such, Plaintiff's additional disciplinary sanctions of the grade demotion and commissary restriction do not support a constitutional due process claim.

Finally, because Plaintiff's deprivations did not amount to a protectable liberty interest, he cannot maintain a substantive due process claim against Edwards for issuing the disciplinary ticket in retaliation against him for filing the PREA complaint.  *See Leslie v. Doyle*, 125 F. 3d 1132, 1137 (7th Cir. 1997) ("even if [Plaintiff] could maintain a claim of straight substantive due process, his deprivation did not impinge upon a liberty interest under *Sandin*."); *Lagerstrom v. Kingston*, 463

---

[4] IDOC Inmate Search page, https://www2.illinois.gov/idoc/Offender/Pages/InmateSearch.aspx  (last visited Dec. 10, 2020).  *See Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926, 930 n.2 (S.D. Ill. 2006) (a court may judicially notice public records available on government websites) (collecting cases).

F.3d 621, 625 (7th Cir. 2006).

For these reasons, Count 9 for Fourteenth Amendment due process violations will be dismissed without prejudice.

## Official Capacity Claim

Plaintiff sues Edwards in his official capacity only and seeks monetary damages. (Doc. 2, pp. 8-9). However, money damages cannot be awarded against a defendant who is sued in his official capacity. *See Brown v. Budz*, 398 F.3d 904, 918 (7th Cir. 2005) (Eleventh Amendment bars official capacity claims for monetary damages; a defendant may be subject to monetary damages when sued in his/her individual capacity). If Plaintiff intended to assert his claim in Count 8 against Edwards in his individual capacity, he must amend his Complaint in conformance with Federal Rule of Civil Procedure 15 and SDIL Local Rule 15.1.

## Motion for Recruitment of Counsel

Plaintiff has filed a Motion for Recruitment of Counsel (Doc. 4), which is denied without prejudice.[5] In the motion, he states that he has attempted to recruit counsel by writing multiple firms requesting representation. He did not receive replies from some of the attorneys he contacted, but includes a copy of a declination letter from one firm. This information is not sufficient for the Court to determine whether Plaintiff has made a reasonable effort to obtain counsel on his own. Thus, Plaintiff has failed to meet his threshold burden of making a "reasonable attempt" to secure counsel. *See Santiago v. Walls*, 599 F.3d 749, 760 (7th Cir. 2010). Should Plaintiff choose to move for recruitment of counsel in the future, he is **DIRECTED** to include in the motion the names and addresses of at least three attorneys he has contacted, and if available, attach the letters from the attorneys who declined representation.

---

[5] In evaluating Plaintiff's Motion for Recruitment of Counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) and related authority.

**Disposition**

**IT IS HEREBY ORDERED** that **COUNT 8** against Edwards survives preliminary review pursuant to 28 U.S.C. § 1915A and shall proceed for further consideration. The Motion for Recruitment of Counsel (Doc. 4) is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that **COUNT 9** fails to state a claim upon which relief may be granted and is **DISMISSED** from this action without prejudice.

The Clerk shall prepare for **KYLE A. EDWARDS**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to send these forms, a copy of the Complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If the Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendant need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. § 1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  December 10, 2020**

> *s/ Reona J. Daly*
> **REONA J. DALY**
> **United States Magistrate Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the Defendant of your lawsuit and serve him with a copy of your Complaint.  After service has been achieved, Defendant will enter an appearance and file an Answer to your Complaint.  It will likely take at least **60 days** from the date of this Order to receive the Defendant's Answer, but it is entirely possible that it will take **90 days** or more.  When Defendant has filed his Answer, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures.  Plaintiff is advised to wait until counsel has appeared for Defendant before filing any motions, to give the Defendant notice and an opportunity to respond to those motions.  Motions filed before Defendant's counsel has filed an appearance will generally be denied as premature.  Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.